**BASHAM v. HOLCOMB. (No. 2895.)**

Court of Civil Appeals of Texas. Amarillo. Nov. 2, 1927.

Rehearing Denied Dec. 7, 1927.

Brokers ⊚═86(5)—Evidence held to sustain finding that broker procured purchaser ready, willing, and able to purchase oil lease interest on owner's terms.

Evidence *held* to sustain finding of jury that broker procured purchaser who was ready, willing, and able to purchase defendant's interest in oil and gas lease on defendant's terms, entitling broker to commission for defendant's refusal to consummate transaction.

Appeal from Wichita County Court; C. M. McFarland, Judge.

Suit by Thomas Holcomb against C. E. Basham. Judgment for plaintiff, and defendant appeals. Affirmed.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellant.

Harris & Martin, of Wichita Falls, for appellee.

JACKSON, J. Thomas Holcomb, the appellee, instituted this suit in the county court

of Wichita county, Tex., against C. E. Basham, the appellant, to recover a commission of $250 for the sale of certain property listed with appellee by appellant.

The appellee alleged that he was a broker engaged in making sales of oil and gas leases, and that appellant listed with him for sale, for the sum of $10,000, one-half of which to be paid in cash and one-half in notes due and payable 90 days after date, an undivided 1/16 interest in an oil and gas lease on lot 24, block 27, of the American Tribune Colony lands; that by the terms of the listing contract, it was agreed that appellee should obtain a purchaser ready, willing, and able to purchase appellant's interest for the sum of $10,000, for which services appellant promised appellee 2½ per cent. commission, or $250; that in pursuance to said agreement appellee procured for appellant a purchaser, B. J. Shaw, for said property, at the agreed price of $10,000, one-half to be paid in cash and one-half in notes due in 90 days; that the purchaser was ready, willing, and able to comply with said purchase and offered to comply therewith, but appellant failed and refused to deliver said property, and by reason of the premises, he is obligated and bound to pay appellee the sum of $250, which he has failed and refused to do.

The appellant answered by general demurrer and general denial.

In response to special issues submitted by the court, the jury found, in effect, that the appellee procured a purchaser in the person of B. J. Shaw, who was ready, willing, and able to purchase appellant's property on the terms of the listing contract; that the purchaser so found by appellee did not refuse to accept and pay appellant for his interest in the oil and gas lease in question, unless M. Staniforth would execute an assignment to such interest; that the appellant did refuse to deliver to such purchaser an assignment of his letter of interest in said property, and that the purchaser did not refuse to accept an assignment of appellant's letter of interest to the property.

Upon these findings of the jury, judgment was rendered against appellant and in favor of appellee for the amount sued for, from which judgment this appeal is prosecuted.

Appellant challenges as error the action of the court in rendering judgment against him, because the undisputed evidence shows that the character of the conveyance to be made from appellant to the purchaser was never agreed upon, and the findings of the jury are contrary to the undisputed evidence and their findings are not warranted by the testimony.

The record shows that the appellant was the owner of a 1/16 interest in the oil and gas lease on lot 24, in block 27, but that the legal title to said lot was in M. Staniforth, and that appellant's ownership was evidenced by what is termed, in the record, a "letter of interest," signed by Staniforth, acknowledging that appellant owned a 1/16 interest in the property, which the letter described; that appellant agreed to pay appellee the commission sued for, for making the deal; that appellee secured as his purchaser, B. J. Shaw, who was ready, willing, and able to buy the leasehold interest of appellant for the consideration and on the terms and conditions of the listing contract; that appellee communicated this information to appellant, who, after some hesitation, accepted the proposition and advised appellee to return and tell the purchaser to prepare the kind of letter of interest the purchaser wanted, and appellant would sign it; that appellee returned to Mr. Shaw and told him what the appellant had stated, and Shaw said that so far as the letter of interest is concerned, tell appellant to have Monty Staniforth make out an assignment to him for appellant's interest; that appellee immediately advised the appellant that the purchaser wanted an assignment from Mr. Staniforth, and the appellant said all right and called Mr. Staniforth over the phone, who was not in his office; that immediately thereafter the appellant said to Mr. Thornberry, who came in, that he did not want to sell and was not going to sell, to which Mr. Thornberry replied, in substance, what are you going to do with appellee, who has already sold it, and the appellant said, "We will fix him up; we'll have to buy him a pair of shoes;" that appellant then told appellee he did not want to sell at that price; that he thought the purchaser knew something appellant did not know; that the matter was left open until next morning and appellant finally decided he would not sell.

Mr. Thornberry owned a 1/16 interest in said lot and block and listed it with appellee at the same time and for the same consideration that appellant had listed his 1/16 interest and Mr. Shaw, the purchaser, had also agreed with appellee to buy the interest of Mr. Thornberry, for the same consideration the purchaser had agreed to pay appellant, and Mr. Thornberry had accepted Mr. Shaw as purchaser. Mr. Thornberry testified that he would have secured an assignment from Mr. Staniforth, if he could have done so, and completed the sale if appellant had not refused to complete the deal. There is no testimony that appellant ever requested Mr. Staniforth to make an assignment or execute any other instrument, or that Mr. Staniforth ever declined or refused to do so.

Mr. Shaw testified that the deal was ready to close and he told Hr. Holcomb to get an assignment to appellant's interest, and Mr. Holcomb told him that appellant had been advised by Newton Mayer not to sell at that price, and that was why the deal was not closed; that he was willing to pay $10,000 for appellant's interest, ready and able to do so, but was never offered any letter of in-

terest or any other evidence of title, and he wanted Staniforth to agree that appellant owned an interest in the lease; that he knew the title to the property and was satisfied with it.

There are many other facts and circumstances in the record tending to support the findings of the jury, but in our opinion the above statement is sufficient to disclose that the testimony warranted the findings of the jury.

Appellant assigns as error the action of the trial court in refusing to give, at his request, a peremptory instruction in his behalf. What has already been said is sufficient to show that in our opinion the court did not commit error in refusing a peremptory instruction.

The testimony, in our opinion, being sufficient to warrant the findings of the jury, the judgment is affirmed.